**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LENNAR CORPORATION,**<br>700 N.W. 107th Avenue, Suite 400<br>Miami, Florida 33172<br><br>Plaintiff,<br><br>v.<br><br>**CATHERINE CORTEZ-MASTO,**<br>In her Official Capacity as Attorney<br>General for the State of Nevada<br>Office of the Attorney General<br>100 North Carson Street<br>Carson City, Nevada 89701<br><br>Defendant. | Case No. __________________ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. This is an action for declaratory and injunctive relief by plaintiff Lennar Corporation ("Lennar") against defendant Catherine Cortez-Masto, in her official capacity as Attorney General for the State of Nevada ("Attorney General"), to determine the ability of the Attorney General to employ private, outside counsel on a contingency fee basis to conduct a state investigation of Lennar under the Nevada Deceptive Practices Act, Chapter 598 of the Nevada Revised Statutes (the "Act").

**PARTIES**

2. Lennar is a corporation organized and doing business under the laws of the State of Delaware, with its office and principal place of business located at 700 NW 107th Ave., Ste.

400, Miami, Florida. Lennar is a Fortune 500 company that was ranked as the nation's third largest homebuilder in 2008. Currently, Lennar builds single-family homes in 40 markets in 14 states, including Nevada. Lennar builds homes in the State of Nevada through its subsidiaries, Greystone Nevada, LLC, Lennar Reno, Inc., and U.S. Home Corporation, and the Company originates loans through its affiliated residential mortgage lender, Universal American Mortgage Company, LLC.

3. The Attorney General is an elected position in the State of Nevada, and is responsible for enforcement of the Nevada criminal code as well as certain civil statutes. The Attorney General maintains offices in Carson City, Reno, and Las Vegas.

**JURISDICTION AND VENUE**

4. This action arises under the Constitution and laws of the United States, and this Court has federal question jurisdiction over this action pursuant to Article III of the Constitution and 28 U.S.C. § 1331.

5. Lennar's right to immediate judicial review in this Court with respect to the Attorney General's alleged conduct is based on the federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the Fourteenth Amendment of the United States Constitution.

6. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in the District of Columbia.

7. All activities conducted on behalf of the Attorney General to date have occurred in Washington, DC, and, upon information and belief, the Attorney General intends all future investigative conduct to be conducted in Washington, DC.

## FACTUAL BACKGROUND

8. On February 4, 2010, the Attorney General served a Subpoena on Lennar pursuant to her powers under NRS § 598.0963. Section 598.0963 gives the Attorney General authority to issue subpoenas and conduct an investigation whenever she has reason to believe the Act has been violated.

9. The Attorney General may pursue civil or criminal penalties under the Act.

10. On February 14, 2010, Lennar, by counsel, sent an email to the Office of the Attorney General seeking general clarification of the Subpoena as well as an extension of time within which to respond to the Subpoena. In response to this correspondence, on February 17, 2010, Betsy Miller of the law firm Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein"), wrote back to inform Lennar's counsel that Cohen Milstein would be handling the investigation for the Attorney General, and stated that she would be the "point of contact for the Lennar investigation."

11. Ms. Miller did not state the authority under which she was acting on behalf of the State of Nevada.

12. On February 23, 2010, Lennar responded to Ms. Miller via email and requested that she state the authority under which Cohen Milstein was acting on behalf of the State of Nevada. In response to this email, Ms. Miller forwarded the message to Ernest D. Figueroa, the Chief Deputy Attorney General in the Attorney General's Bureau of Consumer Protection. Mr. Figueroa responded by stating: "In response to your inquiry, I am confirming that the Nevada Attorney General[']s office has retained the law firm of Cohen Milstein Sellers & Toll as outside/co-counsel for lending practice issues." Mr. Figueroa also stated that Cohen Milstein was bound by the same confidentiality requirements as the Attorney General, but did not

mention any specific authority under which the Attorney General was authorized to hire Cohen Milstein to conduct the investigation.

13. The Attorney General has yet to inform Lennar what authority allows the Attorney General to hire outside counsel to conduct this investigation on behalf of the State of Nevada.

## COHEN MILSTEIN

14. Cohen Milstein is based in Washington, DC, and, according to its website, occupies approximately 60,000 square feet of office space in Washington, DC. The attorneys at Cohen Milstein who have been hired by the Attorney General to conduct this investigation, including Betsy Miller and Linda Singer, are both based in Cohen Milstein's Washington, DC, office.

15. Upon information and belief, substantially all activities conducted by Cohen Milstein on behalf of the Attorney General have occurred in Washington, DC.

16. Upon information and belief, Cohen Milstein, if allowed to go forward and fulfill its obligations under its contract with the State of Nevada, would do so from its offices in Washington, DC.

17. The Cohen Milstein lawyers conducting these investigations have represented a labor union, the Laborers' International Union of North America ("LIUNA"), that is waging an extensive campaign against homebuilders across the country, including Lennar, consisting of activities designed to damage Lennar's business and harm its shareholders. The purpose of this campaign against Lennar and other homebuilders is to coerce Lennar and other homebuilders into forcing their subcontractors to sign union agreements. The rules of professional conduct

prohibit Cohen Milstein from representing Nevada in this matter while also representing LIUNA, or other similar trade unions.

18. Cohen Milstein recently hired Ms. Singer and Ms. Miller "to lead its new public client practice group, which will help state attorneys general, nonprofits ***and unions*** in lawsuits . . . ."[1] The firm bio for one of these lawyers suggests that the representation of LIUNA and other labor unions will continue, stating that the Cohen Milstein lawyers "represent other public-sector clients, including non-profit organizations ***and labor unions*** . . . ."[2]

**LIUNA'S POLEMIC CAMPAIGN AGAINST HOMEBUILDERS**

19. LIUNA has engaged in an extended, adversary campaign against homebuilders throughout the nation, including Lennar. As part of this harassment campaign, LIUNA has initiated false claims that Lennar and other residential homebuilders engaged in allegedly improper practices with respect to the sale of homes. Lennar has been inundated with claims in various states, all with similar wording and accusations, that are driven by LIUNA.

20. LIUNA consistently advances various types of litigation against homebuilders across the country. These efforts have been well publicized, and an article in the Las Vegas Sun on May 9, 2009, detailed the actions LIUNA and its affiliated organization, the Alliance for Home Buyer Justice, have taken against Lennar and other homebuilders in the State of Nevada. *See* Steve Green, Union Group Part of Lawsuit Over Home Prices, Las Vegas Sun (May 9, 2009).[3]

---

[1] Brendan Pierson, *Cohen Milstein Launches Group to Help State AGs*, LAW360, Sept 29, 2009, *available at* http://www.law360.com/articles/125226 (emphasis added).

[2] *See* http://www.cmht.com/attorneys.php?PeopleID=59 (emphasis added).

[3] *Available at* http://www.lasvegassun.com/news/2009/may/09/union-group-part-lawsuit-over-home-prices/.

21. On June 26, 2009, LIUNA sent a letter to the Attorney General enclosing eighteen separate complaints regarding the sales and lending practices of four major homebuilding companies, including Lennar. *See* Exhibit B. The allegations in this letter mirror the requests submitted to Lennar in the subpoena served by the Attorney General.

22. The Alliance for Home Buyer Justice website alleges that Lennar "continues to build, buy more land and offer risky mortgages even as the housing market became increasingly unstable and homebuyers were increasingly in over their head." The same section of their website goes on to pose questions to potential litigants regarding issues identical to those requested in the subpoena served by the Attorney General:

> Were you told that you would be able to refinance, but now can't because your home's value has gone down? Do you think your home was overpriced when you bought it? Did you feel pressured to use the homebuilder's mortgage company? Were you given an adjustable rate, interest only loan? Does your house have construction problems?[4]

23. The Alliance for Home Buyer Justice further has a page dedicated to Lennar, which states: "we believe that Lennar and other large corporate homebuilders put its profits ahead of the long-term sustainability of the industry by inflating home prices, steering homebuyers into unaffordable mortgage[s] and cutting corners on construction."[5]

## THE CONTRACT BETWEEN NEVADA AND COHEN MILSTEIN

24. Through a public records request, Lennar has obtained a copy of the contract for legal services between the Attorney General and Cohen Milstein, titled Contingency Fee Services Agreement (the "Contract"), and dated October 29, 2009. A copy of this contract is attached as Exhibit A to this Complaint.

---

[4] Alliance for Home Buyer Justice Website *available at* http://allianceforhomebuyerjustice.com/node/97.

[5] Alliance for Home Buyer Justice Website *available at* http://allianceforhomebuyerjustice.com/Lennar.

25. The Contract states that the Attorney General may hire outside counsel pursuant to NRS §§ 41.03435 and 284.173.

26. NRS § 228.110(2) places a strict limitation on the use of private attorneys by the Attorney General:

> No officer, commissioner or appointee of the Executive Department of the Government of the State of Nevada shall employ any attorney at law or counselor at law to represent the state of Nevada within the State, or to be compensated by state funds, directly or indirectly, as an attorney acting within the State for the State of Nevada or any agency in the Executive Department unless the Attorney General and his deputies are disqualified to act in such matter or unless an act of the Legislature specifically authorizes the employment of other attorneys or counselors at law.

27. Section 228.110 further states that "[a]ll claims for legal services rendered in violation of this section shall be void."

28. Section 41.03435 is found in the chapter of the Nevada Revised Statutes concerning lawsuits filed against the State of Nevada, its agencies, or employees.

29. NRS § 284.173 does not authorize the employment of legal counsel as independent contractors, as would be required to comply with NRS § 228.110.

30. Section 284.173 further defines "independent contractor" in a manner contradictory to the terms of the Contract's oversight provisions. An "independent contractor" under section 284.173 is "a natural person, firm or corporation who agrees to perform services for a fixed price . . . and without subjection to the supervision or control of the other contracting party, except as to the results of the work, and not as to the means by which the services are accomplished." The Contract, however, places restrictive control provisions upon Cohen Milstein: "[i]t is expressly understood that the Attorney General will have final and exclusive authority over all aspects of this case, including settlement decisions." Ex. A at § 1.1. *See also* Ex. A at § 8.1.

31. Upon information and belief, the Attorney General has not been disqualified from participating in this matter.

32. The Contract requires Cohen Milstein to be paid on a contingent basis from fees and penalties obtained through the prosecution of alleged violations of the Act.

33. The contingency fee agreement states that if there is recovery and collection of damages or monetary penalties, the amount of Cohen Milstein's compensation would be based upon 10 percent of any recovery from 2 to 4 months of the date of the contract; and 15 percent of any recovery received after 4 months of the date of the contract.

34. N.R.S. § 598.0975 further provides that "all fees, civil penalties and any other money collected" under the Act "must be deposited in the State General Fund and may only be used to offset the costs of administering and enforcing" the provisions of the Act. Therefore, Cohen Milstein cannot be compensated on a contingency fee basis.

35. The Contract also specifically envisions Cohen Milstein's representation of other clients: "[w]here expenses are disbursed or are incurred by [Cohen Milstein] ***which also benefit other clients of [Cohen Milstein] in other, similar litigation*** . . . ." Contract at 3

## ETHICAL OBLIGATIONS OF COHEN MILSTEIN

36. Government attorneys, whether acting in a civil or criminal context, possess a higher duty to pursue justice than do normal attorneys who do not wield the compulsory powers of a state or federal government.

37. The Contract purports to give Cohen Milstein all the powers inherent in the Attorney General. Cohen Milstein, while acting on behalf of the State of Nevada, also must comply with the heightened ethical obligations of the Attorney General.

38. Private parties exercising powers that are traditionally that of the States must adhere to the same requirements that bind government actors.

39. The contingency fee clause in the Contract creates a personal, financial interest within Cohen Milstein to prosecute alleged violations of the Act without regard to their merit. The interest conflicts with the ethical duties of a government attorney.

40. The rules of professional responsibility of Nevada and the District of Columbia prohibit Cohen Milstein from representing the Nevada Attorney General due to its representation of LIUNA and other similarly situated consumers in homebuilder matters related to mortgage lending issues.

41. The lawyers at Cohen Milstein handling the investigations at issue are members of the District of Columbia bar and are subject to the District of Columbia Rules of Professional Conduct.

42. Upon information and belief, the lawyers at Cohen Milstein handling the investigations at issue were deputized as Special Attorney Generals for Nevada, and are subject to the Nevada Rules of Professional Conduct.

43. The District of Columbia and Nevada rules of professional conduct prohibit a lawyer obtaining confidential information about a person through representing the government from representing a private plaintiff in a matter against that person.[6] Because Cohen Milstein purports to represent the State of Nevada in its investigation of Lennar, these rules prohibit Cohen Milstein from representing both LIUNA and the Attorney General.

44. Because of Cohen Milstein's representation of LIUNA, the risk that Cohen Milstein will use confidential information obtained in the Nevada investigation is significant.

---

[6] DC Rule of Professional Conduct 1.11(a); Nevada Rule of Professional Conduct 1.11(a).

Even if Cohen Milstein does not share actual documents, Cohen Milstein cannot unlearn the information they learn through the exercise of the Attorney Generals' investigatory authority.

45. If this Court does not enjoin the Attorney General from allowing Cohen Milstein from obtaining confidential information as part of this investigation, it will be impossible for Lennar to ensure that the knowledge gained in this investigation is not used impermissibly to benefit LIUNA or other similarly situated clients of Cohen Milstein.

46. Further, Nevada Rule of Professional Conduct 1.7 explicitly states that a lawyer shall not represent a client if the representation creates a conflict, defining conflict to include any situation where: "[t]here is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person ***or by a personal interest of the lawyer***." (emphasis added).

47. The District of Columbia Rules of Professional Conduct contain a similar provision in Rule 1.7, stating that a lawyer may not maintain representation of a client where: "[t]he lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or ***interests in a third party or the lawyer's own financial, business, property, or personal interests***." (emphasis added).

**COUNT I**

**Declaratory Judgment Regarding Due Process Violations**

48. Lennar restates and incorporates by reference paragraphs 1 through 47 as though fully set forth herein.

49. The Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, permits this Court to "declare the rights and other legal relations of any interested party seeking such declaration."

50. Constitutional due process prohibits state and federal government attorneys from having a financial interest in the outcome of the cases which they prosecute.

51. This obligation is inherent in the position of Attorney General, and also runs to any employees working on her behalf.

52. The duties and ethical obligations of the Attorney General are inherently in conflict with having a personal, financial interest in the outcome of any given case.

53. A contingency fee contract provides for the payment of a fee measured by the success of the action prosecuted.

54. NRS § 228.110 places a strict limitation on the Attorney General's ability to hire outside counsel to conduct the functions of the Attorney General.

55. Nothing in the Act, NRS § 598.0903 *et seq.*, authorizes the Attorney General to hire outside counsel in light of NRS § 228.110, nor does it authorize the Attorney General to do so on a contingency basis.

56. None of the authority stated by the Attorney General in the Contract authorizes the Attorney General to hire Cohen Milstein to conduct an investigation pursuant to NRS § 598.0903 *et seq.*

57. None of the authority stated by the Attorney General in the Contract authorizes the Attorney General to hire Cohen Milstein on a contingent fee basis.

58. The Contract provides that the "amount of compensation shall be based on the amount of damages or monetary penalties recovered . . . ." The Contract provides for a contingent fee for Cohen Milstein.

59. This contingency fee arrangement provides an incentive for Cohen Milstein to prosecute violations of the Act, regardless of the merit underlying them, which will result in repeated violations of Lennar's constitutional right to due process.

60. The Attorney General's employment of Cohen Milstein on a contingent fee basis is a violation of Lennar's constitutional rights to due process.

## COUNT II

### Injunctive Relief

61. Lennar restates and incorporates by reference paragraphs 1 through 60 as though fully set forth herein.

62. Injunctive relief is appropriate where government conduct results in repeated patterns of constitutional violations. The Contract incentivizes repeated violations of Lennar's constitutional due process rights.

63. There are no adequate legal remedies to prevent the violation of Lennar's constitutional due process rights. There are no adequate methods through which Lennar may object to the Subpoena or petition to quash or modify it under NRS § 598.0903 *et seq.*

64. The Attorney General's employment of Cohen Milstein on a contingent fee basis will irreparably injure Lennar. The Act provides for both civil and criminal penalties, and the Contract is written to incentivize multiple prosecutions to gain the highest monetary amount, regardless of the merit underlying any accusation.

## PRAYER FOR RELIEF

WHEREFORE, Lennar respectfully requests that the Court enter judgment in its favor and against the Attorney General granting the following relief:

1. Declare that the Attorney General is violating Lennar's constitutional rights to due process by employing Cohen Milstein to conduct a state investigation on a contingent fee basis;
2. Declare that the Attorney General has exceeded her statutory authority under NRS § 228.110 in contracting for Cohen Milstein to conduct an investigation pursuant to NRS § 598.0963;
3. Issue an order enjoining the Attorney General from employing Cohen Milstein on a contingent fee basis in violation of Lennar's constitutional due process rights;
4. Award Lennar its reasonable costs incurred in bringing this action; and
5. Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: ______________________

Mitchel H. Kider (DC Bar # 358531)
David M. Souders (DC Bar # 441491)
Jason W. McElroy (DC Bar # 502733)
WEINER BRODSKY SIDMAN KIDER PC
1300 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone: (202) 628-2000
Facsimile: (202) 628-2011

***Counsel for Lennar Corporation***